# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

|  |  |  |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and SIERRA CLUB, | ) ) ) ) | |
| *Petitioners,* | ) ) ) | |
| v. | ) ) | No. _____ |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, United States Environmental Protection Agency, | ) ) ) ) ) ) | |
| *Respondents.* | ) ) ) | |

## PETITION FOR REVIEW

Pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), Federal Rule of Appellate Procedure 15, and 10th Circuit Rule 15, the Center for Biological Diversity and Sierra Club hereby petition this Court for review of the final action taken by Respondents United States Environmental Protection Agency and its Administrator, Lee Zeldin, entitled "Air Plan Approval; Colorado; Serious Attainment Plan Contingency Measures and RACT Requirements for the 2008 8-Hour Ozone National Ambient Air Quality Standards for the Denver Metro/North Front Range Nonattainment Area." Notice of this action was published in the

*Federal Register* on April 9, 2026. *See* 91 Fed. Reg. 17,857 (Apr. 9, 2026), attached hereto as Attachment 1.

Pursuant to 10th Cir. R. 15.2, the respondents requiring service of this petition are the United States Environmental Protection Agency and Lee Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency.

DATED: June 8, 2026

Respectfully submitted,

/s/ *Benjamin Rankin*

Benjamin Rankin, Staff Attorney
Center for Biological Diversity
1411 K St. NW, Ste. 1300
Washington, DC 20005
(202) 849-8402
brankin@biologicaldiversity.org

Ryan Maher, Staff Attorney
Center for Biological Diversity
1411 K St. NW, Ste. 1300
Washington, DC 20005
(781) 325-6303
rmaher@biologicaldiversity.org

*Counsel for Petitioners*

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and SIERRA CLUB, | ) ) ) ) |
| *Petitioners,* | ) ) |
| v. | ) No. _____ |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, United States Environmental Protection Agency, | ) ) ) ) ) ) |
| *Respondents*. | ) ) ) |

## RULE 26.1 DISCLOSURE STATEMENT

The Center for Biological Diversity and Sierra Club have no parent

corporations.  There are no publicly held corporations that have a 10 percent or

greater ownership interest in the Center for Biological Diversity or Sierra Club.

DATED: June 8, 2026

Respectfully submitted,

/s/ *Benjamin Rankin*

Benjamin Rankin, Staff Attorney
Center for Biological Diversity
1411 K St. NW, Ste. 1300
Washington, DC 20005
(202) 849-8402
brankin@biologicaldiversity.org

*Counsel for Petitioners*

# CERTIFICATION OF DIGITAL SUBMISSION, VIRUS SCANNING, AND PRIVACY REDACTIONS

I hereby certify:

a.  There are no privacy redactions required pursuant to Federal Rule of Appellate Procedure 25(a)(5) and 10th Cir. R. 25.5;

b.  This ECF submission was scanned for viruses with the most recent version of Emsisoft Anti-Malware, Version 2024.12.0.12633, which is updated every hour. According to the program, this ECF submission is free of viruses; and

c.  No hard copies of this Petition for Review or Rule 26.1 Disclosure Statement are required to be filed with the Clerk's office.

DATED: June 8, 2026

Respectfully submitted,

/s/ *Benjamin Rankin*

Benjamin Rankin, Staff Attorney
Center for Biological Diversity
1411 K St. NW, Ste. 1300
Washington, DC 20005
(202) 849-8402
brankin@biologicaldiversity.org

*Counsel for Petitioners*

<u>**CERTIFICATE OF SERVICE**</u>

Consistent with 10th Cir. R. 15.2, I hereby provide a list of respondents requiring service of the Petition by the clerk:


Lee Zeldin, Administrator
Office of the Administrator (Mail Code 1101A)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Correspondence Control Unit
Office of General Counsel (Mail Code 2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460
(via certified mail, return receipt requested)

Todd Blanche, Acting Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530


DATED: June 8, 2026


/s/ *Benjamin Rankin*

Benjamin Rankin, Staff Attorney
Center for Biological Diversity
1411 K St. NW, Ste. 1300
Washington, DC 20005
(202) 849-8402
brankin@biologicaldiversity.org

*Counsel for Petitioners*

# **ATTACHMENT 1**



Authority: 42 U.S.C. 7401 *et seq.*

**Subpart AA—Missouri**

■ 2. In § 52.1320, the table in paragraph (c) is amended by revising the entry "10–5.570" to read as follows:

**§ 52.1320  Identification of plan.**

\* \* \* \* \*

(c) \* \* \*

## EPA-Approved Missouri Regulations

| Missouri citation | Title | State effective date | EPA approval date | Explanation |
|---|---|---|---|---|
| **Missouri Department of Natural Resources** | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| **Chapter 5—Air Quality Standards and Air Pollution Control Regulations for the St. Louis Metropolitan Area** | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| 10–5.570 ........... | Control of Sulfur Emissions From Stationary Boilers. | 10/31/2019 | 4/9/2026, 91 FR [insert **Federal Register** page where the document begins]. | |
| \* | \* | \* | \* | \* | \* | \* |

\* \* \* \* \*

[FR Doc. 2026–06832 Filed 4–8–26; 8:45 am]

**BILLING CODE 6560–50–P**

---

# ENVIRONMENTAL PROTECTION AGENCY

## 40 CFR Part 52

[EPA–R08–OAR–2024–0622, EPA–R08–OAR–2025–0233; FRL–12746–05–R8]

**Air Plan Approval; Colorado; Serious Attainment Plan Contingency Measures and RACT Requirements for the 2008 8-Hour Ozone National Ambient Air Quality Standards for the Denver Metro/North Front Range Nonattainment Area**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving state implementation plan (SIP) submittals from the State of Colorado under the Clean Air Act (CAA) that address contingency measures and Reasonably Available Control Technology (RACT) requirements for the 2008 ozone National Ambient Air Quality Standard (NAAQS) for the Denver Metro/North Front Range (DMNFR) Serious ozone nonattainment area. The EPA finds that the State has met the applicable CAA requirements for Serious area contingency measures as well as RACT for certain stationary sources. Accordingly, the EPA is approving the respective SIP revisions to implement the submitted motor vehicle coating contingency measure, but we are not taking action on one of the identified contingency measures included in the submittals that concerns pneumatic controllers. In addition, the EPA is approving regulatory revisions that Colorado adopted to implement RACT requirements for landfill/biogas fired engines, refinery fuel process heaters, and a cold rolling mill, except that we are not taking final action on the RACT requirement for one refinery fuel process heater that was submitted by Colorado due to an identified error. The EPA is taking this action pursuant to the CAA.

**DATES:** This rule is effective on May 11, 2026.

**ADDRESSES:** The EPA has established dockets for the contingency measures and RACT requirements for this action under Docket ID No. EPA–R08–OAR–2024–0622 and EPA–R08–OAR–2025–0233, respectively. All documents in the dockets are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available through *https://www.regulations.gov,* or please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section for additional availability information.

**FOR FURTHER INFORMATION CONTACT:** Matthew Lang, Air and Radiation Division, EPA, Region 8, Mailcode 8ARD–IO, 1595 Wynkoop Street, Denver, Colorado, 80202–1129, telephone number: (303) 312–6709, email address: *lang.matthew@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document "we," "us," and "our" means the EPA.

## I. Background

The background for this action is discussed in detail in our May 8, 2025 and June 18, 2025 proposals.[1] In the document published May 8, 2025, we proposed to approve SIP revisions submitted by Colorado on June 26, 2023, May 23, 2024, and April 2, 2025. These revisions were submitted, in part, to meet the contingency measures requirements of CAA sections 172(c)(9) and 182(c)(9) through adoption of requirements for automotive coating facilities and inclusion of an infeasibility justification for adoption of contingency measures providing for emission reductions of less than one year's worth of progress. In the proposed rulemaking published on June 18, 2025, we proposed to approve SIP revisions submitted by Colorado on June 26, 2023, May 23, 2024, May 30, 2024, and April 2, 2025. These revisions were submitted, in part, to meet the RACT requirement of CAA sections 172(c)(1) and 182(b)(2) through adoption of requirements for landfill/biogas fired engines, refinery fuel process heaters, and a cold rolling mill. The EPA also

---

[1] *See* 90 FR 19447 and 90 FR 25960, respectively.

issued interim final determinations concurrently with the May 8, 2025 and June 18, 2025 proposed approvals of Colorado's contingency measures and RACT SIP submissions to stay and defer sanctions pending from the EPA's prior disapproval actions for the two requirements.[2]

## II. Response to Comments

We received comments on the May 8, 2025 proposal and the accompanying interim final determination from the following commenters: (1) the Center for Biological Diversity (CBD), the Colorado Sierra Club, and Public Employees for Environmental Responsibility in a comment letter submitted jointly (herein referred to as CBD comments), and (2) an anonymous public commenter. We also received comments on the June 18, 2025 proposal and associated interim final determination from the following three commenters: two anonymous public commenters and from Suncor Energy. All comments received are located in the two dockets for this action listed above.

Concerning the May 8, 2025 proposal, the anonymous public comment is not directed to the proposed SIP revisions addressed in this rulemaking, and therefore the EPA is not responding to it. The comments from CBD raise concerns related to our proposed action on Colorado's contingency measures SIP submittal, including the associated infeasibility justification, and claim that the submittal does not satisfy the requirements of CAA sections 172(c)(9) and 182(c)(9). As to the June 18, 2025 proposal, one of the anonymous public comments is not relevant to the RACT requirements at issue in the proposed

rule and the EPA is not responding to it. The other anonymous comment discusses requirements for cement production process heaters generally and is not specific to RACT for refinery fuel-fired process heaters addressed by the proposed rule. The comment on the June 18, 2025 proposal from Suncor Energy identifies an error in the associated regulatory revisions submitted by the State of Colorado. A summary of the comments on the May 8, 2025 and June 18, 2025 actions that are relevant to this final action and the EPA's responses are provided in the Response to Comments document, which is located in the rulemaking dockets for this action.

## III. Final Action

The EPA is finalizing approval of Colorado's SIP revisions related to the contingency measures requirement because we find that they satisfy CAA sections 172(c)(9) and 182(c)(9) for the DMNFR Serious ozone nonattainment area with respect to the 2008 ozone NAAQS. This includes approval of the adopted automotive coatings contingency measure, the infeasibility justification, and associated regulatory revisions to Regulation 7 (Reg. 7) and Regulation 25 (Reg. 25) identified in the May 8, 2025 proposed rule. The EPA is also finalizing approval of the majority of Colorado's SIP revisions related to the RACT requirement because we find that they satisfy CAA sections 172(c)(1) and 182(b)(2). This includes approval of regulatory requirements for landfill/biogas fired engines, refinery fuel process heaters, and a cold rolling mill located in Colorado's Reg. 7 and Regulation 26 (Reg. 26) detailed in the

June 18, 2025 proposed rule. Specifically, the EPA is finalizing approval of the regulatory revisions identified in table 1 in this document (below) for which we proposed approval in the May 8, 2025 and June 18, 2025 proposed rules.

As described in the EPA's June 18, 2025 proposed rule,[3] the EPA is not taking action on the addition to Reg. 7, Part E, section II.A.4. from the June 26, 2023 SIP submittal that concerns the May 1, 2024 compliance date for equipment specified under sections II.A.1.d.-e. The EPA will propose action on the associated revision to section II.A.4. concurrently with the revisions to sections II.A.1.d.–e. in a future action.

The EPA is also not finalizing approval of revisions to Reg. 7, Part A, sections I.A.1.a., I.B.2.a.(iii), I.B.2.d., and I.B.2.d.(iii)–(iv), as well as the corresponding language in Reg. 25, Part A, sections I.A.1.a., I.B.2.a.(iii), I.B.2.d., and I.B.2.d.(iii)–(iv), which we had proposed approval of in our May 8, 2025 proposed rule. The revisions to these sections relate to the portion of northern Weld County which is included in the DMNFR nonattainment area for the 2015 ozone NAAQS but is not included within the DMNFR nonattainment area for the 2008 ozone NAAQS. As such, it is unnecessary to finalize our approval of the revisions referenced above in this action concerning contingency measures and RACT requirements for the Serious classification of the DMNFR nonattainment area for the 2008 ozone NAAQS. The EPA intends to address these revisions in a separate action at a later date.

TABLE 1—SUMMARY OF EPA'S FINAL APPROVAL OF REVISIONS TO REGULATIONS 7, 25, AND 26

| Submittal | Revisions included in the EPA's final approval |
|---|---|
| June 26, 2023 | Reg. 7, Part A, sections I.B.2.a.(i)-(ii), I.B.2.c, I.B.2.e., II.A.13–18, II.C.1; Reg. 7, Part C, sections I.A.3.a., I.P; Reg. 7, Part E, sections I.D.4.a.(i)(B), II, II.A.4 (partial approval), II.A.4.a.(vii), II.A.4.b.(ii), II.A.5.a.(i), II.A.5.b.(i)(A)(2)–(3), II.A.5.b.(i)(B)(1)–(2), II.A.5.b.(ii)(A), II.A.5.b.(ii)(B)(1)–(2), II.A.5.b.(ii)(B)(6)–(7), II.A.5.b.(ii)(D)–(E), II.A.6.a.(i)–(ii), II.A.6.b.(viii)(F)–(G), II.A.6.c.(ii), II.A.7.f.(iii), V.A.6.b. |
| May 23, 2024 | Reg. 7, Part C, section I.P; removal of Reg. 7, Part E; Reg. 25, Part A; Reg. 25, Part B, sections I.A., I.P.; Reg. 25 appendix D–E; Reg. 26, Part A; Reg. 26, Part B. |
| May 30, 2024 | Reg. 26, Part A, section I.C, Reg. 26; Part B, sections I.C.1., II.A.4.f, II.A.5.b.(ii)(E)–(F), II.A.7.h, II.A.8.b.(i), V.A.1.a. |

[2] See 90 FR 19424 and 90 FR 25901, respectively.    [3] See 90 FR 25960 at footnote 21.

TABLE 1—SUMMARY OF EPA'S FINAL APPROVAL OF REVISIONS TO REGULATIONS 7, 25, AND 26—Continued

| Submittal | Revisions included in the EPA's final approval |
| --- | --- |
| April 2, 2025 .................................... | Reg. 25, Part A, section II.C.2.; Reg. 25, Part B, sections I.P.1.b., I.P.3., I.P.4.b., I.P.7.a., I.P.7.a.(vi), I.P.7.b., I.P.8; Reg. 26, Part B, sections II.A.4., II.A.4.g.(i), II.A.4.g.(iv)–(v), II.A.5.a.(iii), II.A.5.b.(i)(A), II.A.5.b.(ii)(B)(1), IX. |

**Note:** At this time, the EPA is not finalizing action on any of the revisions included in the June 26, 2023, May 23, 2024, May 30, 2024, and April 2, 2025 submittals besides those identified in table 1. This means that there are revisions to Reg. 7, Part E included as part of the June 26, 2023 submittal which will not yet be incorporated into the SIP as part of the newly established Reg. 26. Additionally, and as described previously, the EPA is not finalizing approval of the June 26, 2023 revisions to Reg. 7, Part A, sections I.A.1.a., I.B.2.a.(iii), I.B.2.d., and I.B.2.d.(iii)–(iv) concerning northern Weld County, as well as the corresponding language in the newly established Reg. 25, Part A, sections I.A.1.a., I.B.2.a.(iii), I.B.2.d., and I.B.2.d.(iii)–(iv). The EPA will act on these revisions and their incorporation into the SIP within Regulations 25 and 26 in a future action. With regards to the revisions to Reg. 26, Part B, section II.A.4.g.(iv), the EPA is not finalizing approval of the language included in table 3 of section II.A.4.g.(iv) concerning process heater H–1717 due to an identified error in that table. Finally, those sections marked as "state-only" in Colorado's SIP submittals are not included for incorporation into the SIP. Therefore, the EPA is not finalizing action on these sections, and any such sections which were relocated from Reg. 7 to Reg. 25 or Reg. 26 will continue to be "state-only."

In this final action EPA is not acting upon that portion of the SIP submission that incorporates heater H–1717 due to an error that was identified in the regulatory revisions submitted by the State of Colorado on April 2, 2025, concerning RACT determinations for individual refinery fuel process heaters. Colorado's technical support documentation accompanying its RACT determinations for process heaters, as well as the EPA's proposed rule, make clear that Colorado determined that additional controls were not technologically or economically feasible for all refinery fuel process heaters.[4] Colorado therefore adopted revisions at Reg. 26, Part B, section II.A.4.g.(iv) to identify the existing emission controls that were determined to represent RACT for individual units. For the process heater designated H–1717, the existing emission control was inadvertently listed as operation of ultra-low $NO_X$ burners. However, heater H–1717 is equipped with low $NO_X$ burners as shown in Colorado's supporting technical documentation at table 5[5] and Colorado's analysis of economic infeasibility of ultra-low $NO_X$ burner or Selective Catalytic Reduction (SCR) retrofit, as summarized in tables 8 and 9 of the State's analysis, demonstrates the lack of additional feasible emission controls available for the unit.[6] In our proposed rule, the EPA concurred with Colorado's rejection of burner retrofits and SCR for heater H–1717 on the basis of economic infeasibility, highlighting that the EPA correctly evaluated Colorado's RACT determination despite the error in the submitted regulatory revisions.[7] However, due to the

identified error, the EPA is not finalizing our proposed approval for RACT concerning process heater H–1717. We are also not finalizing approval of the language included in table 3 of the revision to Reg. 26, Part B, section II.A.4.g.(iv) concerning heater H–1717. The EPA intends to take action to approve RACT for heater H–1717 when the corrected rule text is submitted to the EPA by Colorado for incorporation into the SIP. The SIP's inclusion of inaccurate existing burner technology for process heater H–1717 in table 3 of Reg. 26, Part B, section II.A.4.g.(iv) does not affect our approval of Colorado's RACT SIP submittal for all other identified process heaters besides heater H–1717. To be clear, the EPA is not disapproving Colorado's SIP submission concerning process heater H–1717. Rather, because of the identified error in the State's submission, we are not acting upon that portion of the submission, and intend to approve an anticipated, future submission from Colorado that corrects the error.

Because the EPA is now finalizing approval of the portions of Colorado's SIP submittals that correct the prior contingency measure disapproval, the associated sanctions from EPA's November 7, 2023 are now fully relieved. The EPA is also finalizing approval of RACT requirements for landfill/biogas engines and a cold rolling mill and is determining that our prior December 8, 2023 disapproval concerning these specific sources is now resolved. Concerning RACT requirements for refinery fuel process heaters that were included in the EPA's December 8, 2023 disapproval, the EPA is finalizing our proposed approval that Colorado has adopted RACT for all of the affected units except for process heater H–1717 due to the identified error in Colorado's submitted regulatory language. Therefore, our December 8, 2023 disapproval concerning RACT and

associated deferred sanctions will not be fully resolved until EPA receives and takes final action concerning RACT for heater H–1717. To be clear, the interim final determination issued June 18, 2025 remains in effect with sanctions deferred pending EPA action on an anticipated error correction to be submitted by Colorado.

## IV. Incorporation by Reference

In this document, the EPA is finalizing regulatory text that includes incorporation by reference. In accordance with requirements of 1 CFR 51.5, the EPA is finalizing the incorporation by reference of Colorado Air Quality Control Commission Reg. 7 pertaining to the "Control of Ozone via Ozone Precursors and Control of Hydrocarbons via Oil and Gas Emissions (Emissions of Volatile Organic Compounds & Nitrogen Oxides)," Reg. 25 pertaining to the "Control of Emissions from Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals," and Reg. 26 pertaining to the "Control of Emissions from Engines and Major Stationary Sources" (as listed in table 1 above and discussed in section III.). The EPA has made, and will continue to make, these materials generally available through *https://www.regulations.gov* and at the EPA Region 8 Office (please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section of this preamble for more information). Therefore, these materials have been approved by the EPA for inclusion in the SIP, have been incorporated by reference by the EPA into that plan, are fully federally enforceable under sections 110 and 113 of the CAA as of the effective date of the final rulemaking of the EPA's approval, and will be incorporated by reference in the next update to the SIP compilation.[8]

---

[4] *See* April 2, 2025 SIP Submittal, Document Set 1 of 2, "Technical Support Document for Reasonably Available Control Technology for Major Sources" at 26–27 and 29–32, available in Docket ID No. EPA–R08–OAR–2025–0233. *See* also 90 FR 25960 at 25964 and 25966.

[5] *Id.* at 18.

[6] *Id.* at 29–32.

[7] *See* 90 FR 25960 at 25964 and 25966.

[8] 62 FR 27968 (May 22, 1997).

## V. Statutory and Executive Order Reviews

Under the CAA, the Administrator is required to approve a SIP submission that complies with the provisions of the Act and applicable Federal regulations. 42 U.S.C. 7410(k); 40 CFR 52.02(a). Thus, in reviewing SIP submissions, the EPA's role is to approve state choices, provided that they meet the criteria of the CAA. Accordingly, this action merely approves state law as meeting Federal requirements and does not impose additional requirements beyond those imposed by state law. For that reason, this action:

• Is not a significant regulatory action subject to review by the Office of Management and Budget under Executive Order 12866 (58 FR 51735, October 4, 1993);

• Is not subject to Executive Order 14192 (90 FR 9065, February 6, 2025) because SIP actions are exempt from review under Executive Order 12866;

• Does not impose an information collection burden under the provisions of the Paperwork Reduction Act (44 U.S.C. 3501 *et seq.*);

• Is certified as not having a significant economic impact on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*);

• Does not contain any unfunded mandate or significantly or uniquely affect small governments, as described in the Unfunded Mandates Reform Act of 1995 (Pub. L. 104–4);

• Does not have federalism implications as specified in Executive Order 13132 (64 FR 43255, August 10, 1999);

• Is not subject to Executive Order 13045 (62 FR 19885, April 23, 1997) because it approves a state program;

• Is not a significant regulatory action subject to Executive Order 13211 (66 FR 28355, May 22, 2001); and

• Is not subject to requirements of section 12(d) of the National Technology Transfer and Advancement Act of 1995 (15 U.S.C. 272 note) because application of those requirements would be inconsistent with the CAA.

In addition, the SIP is not approved to apply on any Indian reservation land or in any other area where the EPA or an Indian Tribe has demonstrated that a Tribe has jurisdiction. In those areas of Indian country, the rule does not have Tribal implications and will not impose substantial direct costs on Tribal governments or preempt Tribal law as specified by Executive Order 13175 (65 FR 67249, November 9, 2000).

This action is subject to the Congressional Review Act (CRA), and EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by June 8, 2026. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements (see section 307(b)(2)).

## List of Subjects in 40 CFR Part 52

Environmental protection, Air pollution control, Ammonia, Carbon oxides, Incorporation by reference, Intergovernmental relations, Lead, Nitrogen oxides, Ozone, Particulate matter, Reporting and recordkeeping requirements, Sulfur oxides, Volatile organic compounds.

Dated: March 31, 2026.

**Cyrus M. Western,**

*Regional Administrator, Region 8.*

For the reasons stated in the preamble, the Environmental Protection Agency is amending 40 CFR part 52 as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

## Subpart G—Colorado

■ 2. In § 52.320:
■ a. In the table in paragraph (c):
■ i. Under the center heading "5 CCR 1001–09, Regulation Number 7, Control of Ozone Via Ozone Precursors and Hydrocarbons via Oil and Gas Emissions, (Emissions of Volatile Organic Compounds and Nitrogen Oxides), Part A, Applicability and General Provisions", revise the entries "I. Applicability" and "II. General Provisions".
■ ii. Under the center heading "5 CCR 1001–09, Regulation Number 7, Control of Ozone Via Ozone Precursors and Hydrocarbons via Oil and Gas Emissions, (Emissions of Volatile Organic Compounds and Nitrogen Oxides), Part C, Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals", revise the entry "I. Surface Coating Operations".
■ iii. Removing the center heading "5 CCR 1001–09, Regulation Number 7, Control of Ozone Via Ozone Precursors and Hydrocarbons via Oil and Gas Emissions, (Emissions of Volatile Organic Compounds and Nitrogen Oxides), Part E, Combustion Equipment and Major Source RACT" and the entries "I. Control of Emissions from Engines", "II. Control of Emissions from Stationary and Portable Engines and Other Combustion Equipment in the 8-Hour Ozone Control Area", "III. Control of Emissions from Specific Major Sources of VOC and/or $NO_X$ in the 8-Hour Ozone Control Area", and "IV. Control of Emissions from Breweries in the 8-hour Ozone Control Area".
■ iv. Add the center heading "5 CCR 1001–29 Regulation Number 25, Control of Emissions From Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals, Part A, Applicability and General Provisions" and the entries "I. Applicability" and "II. General Provisions" at the end of the table.
■ v. Add the center heading "5 CCR 1001–29 Regulation Number 25, Control of Emissions From Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals, Part B, Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals" and the entries "I. Surface Coating Operations", "Appendix D Minimum Cooling Capacities for Refrigerated Freeboard Chillers on Vapor Degreasers", and "Appendix E Emission Limit Conversion Procedure" at the end of the table.
■ vi. Add the center heading "5 CCR 1001–30 Regulation Number 26, Control of Emissions from Engines and Major Stationary Sources, Part A, Applicability and General Provisions" and the entry "I. General Provisions" at the end of the table.
■ vii. Add the center heading "5 CCR 1001–30 Regulation Number 26, Control of Emissions from Engines and Major Stationary Sources, Part B, Combustion Equipment and Major Source RACT" and the entries "I. Control of Emissions from Engines", "II. Control of Emissions from Stationary and Portable Combustion Equipment in the 8-Hour Ozone Control Area or Northern Weld County", "III. Control of Emissions from Specific Major Sources of VOC and/or $NO_X$ in the 8-Hour Ozone Control Area", "IV. Control of Emissions from Breweries in the 8-hour Ozone Control Area", "V. Control of Emissions from

Foam Manufacturing in the 8-hour Ozone Control Area", and "IX. Control of Emissions from Cold Rolling Mills" at the end of the table.

■ b. In the table in paragraph (e):

■ i. Under the center heading "Maintenance and Attainment Plan Elements", add the entries "Contingency Measures for the 2008 8-Hour Ozone National Ambient Air Quality Standard (NAAQS) Serious State Implementation Plan (Contingency Measures SIP)" and "Landfill/biogas fired engine, refinery fuel process heater, and cold rolling mill RACT for the 2008 8-Hour Ozone National Ambient Air Quality Standard (NAAQS) Serious State Implementation Plan" after the entry titled "Ozone (8-hour, 2015) DMNFR 2017 Base Year Inventory".

The revisions and additions read as follows:

### § 52.320 Identification of plan.

\* \* \* \* \*

(c) \* \* \*

| Title | State effective date | EPA effective date | Final rule citation/date | Comments |
|---|---|---|---|---|
| * | * | * | * | * * * |
| **5 CCR 1001–09, Regulation Number 7, Control of Ozone Via Ozone Precursors and Hydrocarbons via Oil and Gas Emissions, (Emissions of Volatile Organic Compounds and Nitrogen Oxides), Part A, Applicability and General Provisions** | | | | |
| * | * | * | * | * * * |
| I. Applicability .................. | 2/14/2023 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | State-only provisions excluded. Previous SIP approval 8/5/11. Nonsubstantive changes approved 7/3/2018, 2/24/2021, and 11/5/2021. Revisions to I.A.1.a., I.B.2.a.(iii), I.B.2.d., and I.B.2.d.(iii)-(iv) excluded from approval dated 4/9/2026 insofar as related to northern Weld County. Revisions to I.A.1.c., I.B.1.a., I.B.1.c., I.B.1.d., I.B.2.h. and I.B.2.i. excluded from approval dated 4/9/2026. |
| II. General Provisions ....... | 2/14/2023 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | State-only provisions excluded. Previous SIP approval 8/5/11. Nonsubstantive changes approved 2/24/2021 and 11/5/2021. Appendix A excluded. |
| * | * | * | * | * * * |
| **5 CCR 1001–09, Regulation Number 7, Control of Ozone Via Ozone Precursors and Hydrocarbons via Oil and Gas Emissions, (Emissions of Volatile Organic Compounds and Nitrogen Oxides), Part C, Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals** | | | | |
| I. Surface Coating Operations. | 6/14/2023 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | Previous SIP approval 8/5/2011; nonsubstantive changes approved 7/3/2018; substantive changes approved 2/24/2021; nonsubstantive changes approved 11/5/2021. Substantive changes limited approval/disapproval 5/9/2023. Revisions to I.L.4.b., I.L.4.d., I.N.7. and I.O.2. excluded from approval dated 4/9/2026. |
| * | * | * | * | * * * |
| **5 CCR 1001–29 Regulation Number 25, Control of Emissions From Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals, Part A, Applicability and General Provisions** | | | | |
| I. Applicability .................. | 6/14/2023 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | State-only provisions excluded. I.A.1.a., I.B.2.a.(iii), I.B.2.d., and I.B.2.d.(iii)–(iv) excluded from approval dated 4/9/2026 insofar as related to northern Weld County. |
| II. General Provisions ....... | 2/14/2025 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | State-only provisions excluded. II.E., II.F., and appendix A excluded. |
| **5 CCR 1001–29 Regulation Number 25, Control of Emissions From Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals, Part B, Surface Coating, Solvents, Asphalt, Graphic Arts and Printing, and Pharmaceuticals** | | | | |
| I. Surface Coating Operations. | 2/14/2025 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | I.B. through I.O. excluded pending move from Regulation 7. |
| Appendix D Minimum Cooling Capacities for Refrigerated Freeboard Chillers on Vapor Degreasers. | 6/14/2023 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | |

| Title | State effective date | EPA effective date | Final rule citation/date | Comments |
|---|---|---|---|---|
| Appendix E Emission Limit Conversion Procedure. | 6/14/2023 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | |

**5 CCR 1001–30 Regulation Number 26, Control of Emissions from Engines and Major Stationary Sources, Part A, Applicability and General Provisions**

| Title | State effective date | EPA effective date | Final rule citation/date | Comments |
|---|---|---|---|---|
| I. General Provisions ........ | 2/14/2024 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | Appendix A excluded. |

**5 CCR 1001–30 Regulation Number 26, Control of Emissions from Engines and Major Stationary Sources, Part B, Combustion Equipment and Major Source RACT**

| Title | State effective date | EPA effective date | Final rule citation/date | Comments |
|---|---|---|---|---|
| I. Control of Emissions from Engines. | 2/14/2024 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | State-only provisions excluded. I.D.4.c. excluded from approval dated 4/9/2026. |
| II. Control of Emissions from Stationary and Portable Combustion Equipment in the 8-Hour Ozone Control Area or Northern Weld County. | 2/14/2025 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | State-only provisions excluded. II.A.1.c.-e., II.A.4. (4th paragraph), II.A.4.a.(v)–(vi), portions of II.A.4.d. and II.A.4.d.(i), II.A.4.d.(ii)–(iii), II.A.4.e.(ii), II.A.4.g.(iii), Row 4 of table 3 in II.A.4.g.(iv), II.A.5.a.(iv)–(v), II.A.5.b.(ii)(B)(5), II.A.5.b.(ii)(C), II.A.6.a.(iii)–(v), II.A.6.b.(viii)(C)–(E), and II.A.8.c. excluded from approval dated 4/9/2026. |
| III. Control of Emissions from Specific Major Sources of VOC and/or $NO_X$ in the 8-Hour Ozone Control Area. | 6/14/2023 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | III.C. excluded from approval dated 4/9/2026. |
| IV. Control of Emissions from Breweries in the 8-hour Ozone Control Area. | 6/14/2023 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | |
| V. Control of Emissions from Foam Manufacturing in the 8-hour Ozone Control Area. | 2/14/2024 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | V.A.1.b., portion of V.A.4.a., and V.A.8.b. excluded from approval dated 4/9/2026. |
| IX. Control of Emissions from Cold Rolling Mills. | 2/14/2025 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | |

\*    \*    \*    \*    \*

(e) \* \* \*

| Title | State effective date | EPA effective date | Final rule citation/date | Comments |
|---|---|---|---|---|
| \* | \* | \* | \* | \* |

**Maintenance and Attainment Plan Elements**

| | | | | |
|---|---|---|---|---|
| \* | \* | \* | \* | \* |

**Denver Metropolitan Area**

| Title | State effective date | EPA effective date | Final rule citation/date | Comments |
|---|---|---|---|---|
| \* | \* | \* | \* | \* |
| Contingency Measures for the 2008 8-Hour Ozone National Ambient Air Quality Standard (NAAQS) Serious State Implementation Plan (Contingency Measures SIP). | 2/14/2025 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | Approval of previously disapproved element. |
| Landfill/biogas fired engine, refinery fuel process heater, and cold rolling mill RACT for the 2008 8-Hour Ozone National Ambient Air Quality Standard (NAAQS) Serious State Implementation Plan. | 2/14/2025 | 05/11/2026 | 91 FR [insert **Federal Register** page where the document begins], 4/9/2026. | Excluding process heater H–1717 due to identified error in Colorado's submission. |

| Title | State effective date | EPA effective date | Final rule citation/date | Comments |
|-------|---------------------|--------------------|--------------------------|----------|
| * | * | * | * | * | * | * |

[FR Doc. 2026–06837 Filed 4–8–26; 8:45 am]

**BILLING CODE 6560–50–P**

# FEDERAL COMMUNICATIONS COMMISSION

## 47 CFR Part 1

[GN Docket No. 25–149; FCC 26–3; FR ID 294037]

## Review of Foreign Ownership Policies for Broadcast, Common Carrier and Aeronautical Radio Licensees

**AGENCY:** Federal Communications Commission.

**ACTION:** Final rule.

**SUMMARY:** In this document, the Federal Communications Commission (Commission or FCC) adopted a Report and Order to update foreign ownership rules for common carrier and broadcast licensees to clarify the Commission's review under section 310(b) of the Communications Act of 1934. With regard to common carrier licensees, the Report and Order adopted rules to codify existing policy regarding which entity is the controlling U.S. parent; codify the Commission's advance approval policy regarding certain deemed voting interests; require identification of trusts and trustees; extend the remedial procedures and methodology to privately held companies; add requirements regarding the contents of remedial petitions; require the filing of amendments as a complete restatement to petitions for declaratory ruling; and clarify U.S. residency requirements. For broadcast licensees only, the Report and Order covers: how the Commission should process applications filed by a broadcast licensee during the pendency of a remedial petition for declaratory ruling under section 310(b)(4); and other foreign ownership considerations related to processing applications for NCE and LPFM stations. Regarding broadcast licensees only, the Report and Order directs the Media Bureau to issue processing guidelines detailing how the Commission would process applications filed by a broadcast licensee during the pendency of a remedial section 310(b)(4) petition; and clarifies other foreign ownership considerations related to processing applications for noncommercial educational (NCE) and low power FM (LPFM) stations.

**DATES:** *Effective date:* These rules are effective May 11, 2026.

**FOR FURTHER INFORMATION CONTACT:** Brenda D. Villanueva, Telecommunications and Analysis Division, Office of International Affairs, at *Brenda.Villanueva@fcc.gov* or (202) 418–7131. For additional information concerning the Paperwork Reduction Act (PRA) information collection requirements contained in this document, contact Cathy Williams at 202–418–2918, or via the internet at *Cathy.Williams@fcc.gov.*

**SUPPLEMENTARY INFORMATION:** This is a summary of the Commission's *Report and Order,* in GN Docket No. 25–149; FCC 26–3, adopted on January 29, 2026, and released on January 30, 2026. The full text of this document is available for public inspection and copying via ECFS at *http://apps.fcc.gov/ecfs* and the FCC's website at *https://docs.fcc.gov/public/attachments/FCC-26-3A1.pdf.* Documents will be available electronically in ASCII, Microsoft Word, and/or Adobe Acrobat. Alternative formats are available for people with disabilities (Braille, large print, electronic files, audio format), by sending an email to *fcc504@fcc.gov* or calling the Commission's Consumer and Governmental Affairs Bureau at (202) 418–0530 (voice), (202) 418–0432 (TTY).

*Final Regulatory Flexibility Analysis.* As required by the Regulatory Flexibility Act (RFA), the Commission has prepared this present Final Regulatory Flexibility Analysis (FRFA) of the possible significant economic impact on small entities by the policies and rules proposed in this Report and Order. The Commission will send a copy of this Report and Order, including this FRFA, to the Chief Counsel for Advocacy of the Small Business Administration (SBA). In addition, the Report and Order and FRFA (or summaries thereof) will be published in the **Federal Register**.

## Synopsis

### Discussion

In this Report and Order, we codify and clarify longstanding policies and practices with respect to the Commission's foreign ownership requirements and streamline its review processes under Section 310(b) of the Act. Certain updates apply to common carrier and broadcast licensees, and others apply only to broadcast licensees subject to section 310(b), as discussed below. Through these streamlining efforts, we promote efficiency, clarity, and consistency of our rules while continuing to analyze foreign investment to ensure that it complies with statutory requirements.

### A. Common Carrier and Broadcast Licensees

For common carrier and broadcast licensees,[1] we adopt the proposals in the Notice of Proposed Rulemaking 90 FR 26684 (*Section 310 NPRM*) to codify certain longstanding foreign ownership policies and practices to streamline the Commission's review process under Section 310(b). Specifically, we: (1) codify existing policy regarding which entity in the ownership chain should be designated as the controlling U.S. parent; (2) codify the Commission's advance approval policy regarding certain deemed voting interests; (3) amend our rules to clarify the requirement to identify trusts and trustees in petitions; (4) amend our rules to extend the remedial procedures to privately held companies and continue to allow privately held companies to use the methodology on a case-by-case basis; (5) amend our rules to clarify requirements regarding the contents of remedial Section 310(b) petitions; (6) specify the process of filing amendments to Section 310(b) petitions; and (7) clarify U.S. residency requirements.

### 1. Controlling U.S. Parent Definition

As proposed in the *Section 310 NPRM,* we adopt a definition of controlling U.S. parent to provide regulatory certainty, ease administrative burdens, and codify the Commission's longstanding practice. For purposes of Section 310(b)(4), we define the controlling U.S. parent as "the first controlling entity organized in the United States that is directly above the

---

[1] We refer to broadcast, common carrier wireless, aeronautical en route and aeronautical fixed radio station applicants and licensees (including broadcast permittees) and to common carrier spectrum lessees collectively as "licensees" unless the context warrants otherwise. We also use the term "common carrier" or "common carrier licensees" to encompass common carrier wireless, aeronautical en route and aeronautical fixed radio station applicants and licensees, and spectrum lessees. "Spectrum lessees" is defined in § 1.9003 of part 1, Subpart X ("Spectrum Leasing"). 47 CFR 1.9003.